# Walden Macht & Haran LLP



One Battery Park Plaza, 34th Floor
New York, NY 10004
212 335 2030

**VIA ECF**                                                         May 30, 2018

The Honorable Katherine Polk Failla
United States District Judge
40 Foley Square, Room 2103
New York, NY 10007

Re:   *Clean Coal Technologies, Inc. v. Leidos, Inc., et al.*, Dkt. No. 17-CV-9678 (KPF)

Dear Judge Failla:

We represent Defendant Dr. Anton Dilo Paul in the above-referenced matter. Pursuant to the Court's Rule 4.A, we write regarding Dr. Paul's proposed motion to dismiss the Complaint, under Fed. R. Civ. P. 12(b)(2), (5), and (6). The Court has scheduled a conference regarding Defendant Leidos, Inc.'s proposed motion to dismiss for June 5 at 2:00 p.m. With the consent of both Plaintiff Clean Coal Technologies, Inc. ("CCTI") and Leidos, we respectfully request the opportunity to address Dr. Paul's proposed motion with the Court at that time.[1]

The dubiousness of CCTI's lawsuit against Dr. Paul is apparent from the fact that CCTI served Dr. Paul for the first time with a pleading *two weeks ago*, despite naming him as a defendant last October and knowing that it had failed to make him a party in the five months this case has been pending in federal court. CCTI commenced this lawsuit on October 27, 2017, by filing a Summons with Notice in New York state court, naming Leidos and Dr. Paul as defendants.[2] But CCTI only served Leidos, not Dr. Paul. On December 8, 2017, Leidos, with the consent of Dr. Paul, removed this case to federal court.[3] CCTI was required, under Fed. R. Civ. P. 4(m), to serve its pleading within 90 days of removal—*i.e.*, by March 8, 2018.[4] Over five months after removal, and 70 days past the service deadline, CCTI finally served Dr. Paul, on May 17, 2018. CCTI's Complaint should be dismissed on this ground alone because CCTI "made no effort to effect service within the service period, neglected to ask for an extension within a reasonable period of time, and has advanced no cognizable excuse for the delay."[5] Regardless, there are even more fundamental defects with CCTI's Complaint, which are the focus of this letter— namely, CCTI's failure to establish the personal jurisdiction of this Court over Dr. Paul and CCTI's failure to satisfy the *Iqbal* pleading standard in either of its two tortious interference claims.

---

[1] Dr. Paul will also join in and adopt the arguments for dismissal of his employer, co-defendant Leidos.
[2] *See* Not. of Removal, Ex. A (Dkt. 1.1).
[3] *See* Not. of Removal (Dkt. 1), filed Dec. 8, 2017. Dr. Paul previously reserved all "rights, claims and defenses," including failure of service and personal jurisdiction. *See id.*, ¶ 12; Answer (Dkt. 4), ¶ 3.
[4] *See* 4B Charles Allen Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. § 1137 (4th ed.).
[5] *Zapata v. City of New York*, 502 F.3d 192, 199 (2d Cir. 2007) (dismissing Complaint served four days after service period, even assuming prejudice to individual defendant was "slight").

1. <u>Lack of Personal Jurisdiction:</u>  CCTI fails to carry its "burden" of showing that the Court has personal jurisdiction over Dr. Paul.[6]  This Court, sitting in diversity, exercises personal jurisdiction over Dr. Paul, an individual non-resident, pursuant to New York's long-arm statute, CPLR § 302.[7]  Given that CCTI alleges two torts against Dr. Paul, but fails to allege that Dr. Paul committed them in New York, this Court would have personal jurisdiction only if CCTI shows, under CPLR § 302(a)(3), that Dr. Paul "commit[ted] a tortious act without the state causing injury to person or property within the state . . . ," <u>and</u> that "he (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce."  The Complaint fails to suggest, much less establish, any of these elements of long-arm jurisdiction.

Here, the Complaint alleges, in the Third Cause of Action, that Dr. Paul, a resident of Pennsylvania, tortiously interfered with a contract relating to a pilot plant in Oklahoma; the Complaint further alleges, in the Fourth Cause of Action, that Dr. Paul tortiously interfered with prospective relations (a) with unspecified potential investors because Leidos allegedly had not provided testing data to CCTI that CCTI's potential investors had requested,[8] and (b) with the U.S. Department of Energy ("DOE") because of certain statements that Dr. Paul allegedly made to DOE about CCTI and because Leidos's final report concerning the pilot plant, which CCTI itself sent to DOE, was allegedly "incomplete and inaccurate."[9]  CCTI does not allege that Dr. Paul did any of this in New York.  CCTI also does not allege that it was injured in New York.  An injury occurs where the event causing the injury took place; it "does not occur within the state simply because the plaintiff is a resident."[10]  And "[t]he occurrence of financial consequences in New York due to the fortuitous location of plaintiffs in New York is not a sufficient basis for jurisdiction under § 302(a)(3) where the underlying events took place outside New York."[11]  Finally, there is no allegation that Dr. Paul regularly did business in New York or derived substantial revenue from interstate or international commerce.  In sum, dismissal is warranted because CCTI fails to show personal jurisdiction over Dr. Paul.[12]

Plaintiff's two tortious interference claims fail the *Iqbal* pleading standard, fail to allege essential elements, and appear, at bottom, an unfortunate attempt by CCTI to publicly deflect from its own business failures by casting aspersions on a highly-respected clean energy scientist.

2. <u>Tortious Interference with Contract:</u>  To state a claim for tortious interference with contract, under New York law, CCTI must show (among other elements) that Dr. Paul intentionally and

---

[6] *See Thackurdeen v. Duke Univ.*, 130 F. Supp. 3d 792, 798 (S.D.N.Y. 2015).
[7] *See AVRA Surgical Robotics, Inc. v. Gombert*, 41 F. Supp. 3d 350, 358 (S.D.N.Y. 2014).
[8] Compl. ¶¶ 74–75.
[9] *Id.* ¶¶ 77, 84, 87.
[10] *Mareno v. Rowe*, 910 F.2d 1043, 1046 (2d Cir. 1990).
[11] *Madison Capital Markets, LLC v. Starneth Europe B.V.*, No. 15-CV-7213, 2016 WL 4484251, at *5 (S.D.N.Y. Aug. 23, 2016) (citations omitted).
[12] *See Siegel v. Holson Co.*, 768 F. Supp. 444, 446 (S.D.N.Y. 1991) (dismissing tortious interference claim against an employee because his contacts with New York were infrequent and there were no allegations that he derived revenue from interstate commerce); *see also AVRA Surgical Robotics, Inc.*, 41 F. Supp. 3d at 361–62.

improperly procured Leidos's breach of the Services Agreement and that no breach would have occurred "but for" Dr. Paul's wrongful acts.[13]  Ordinarily, an agent of the party allegedly in breach of a contract is not subject to liability for tortious interference with that contract; thus, Dr. Paul should be immune from such claims.[14]  CCTI can only state a claim for tortious interference against Dr. Paul through "a narrow exception" that may be found where an agent acts "wholly outside the scope of [his] authority *for purely personal gain*," but in that case, "an enhanced pleading standard applies."[15]  CCTI's conclusory allegations of a personal vendetta fail in both respects.  The only act CCTI alleges that is conceivably outside the scope of Dr. Paul's employment is the scurrilous allegation that Dr. Paul asked CCTI to issue stock to him personally (which it oddly tries to substantiate by alleging a text message that does not ask for stock to be issued to Dr. Paul personally).[16]  But this act is not alleged to have interfered with CCTI's contract.  And even assuming that Dr. Paul failed to perform duties Leidos assigned to him, and that Leidos was obligated by the Services Agreement to perform these duties (each of which Dr. Paul denies), CCTI fails to allege that Dr. Paul's acts were done with "malice and were calculated to impair [CCTI's] business for the personal profit of [Dr. Paul]."[17]  Furthermore, CCTI fails to allege that Dr. Paul's alleged acts were the "but for" cause of Leidos's alleged breach because CCTI has alleged that Leidos breached the Services Agreement in ways that have nothing to do with Dr. Paul's alleged intentional interference.[18]

3. <u>Tortious Interference with Prospective Business Relations</u>:  CCTI's claim that Dr. Paul tortiously interfered with prospective business relations with unspecified potential investors and the DOE also fails because such a claim requires a plaintiff to allege conduct that amounts to "a crime or an independent tort."[19]  CCTI fails to even allege, in a non-conclusory manner, any false statements by Dr. Paul, much less a crime or independent tort.  Moreover, CCTI does not allege that Dr. Paul took any action "directed at" third-party investors.[20]  Other clear defects of this claim will be set forth in our motion papers.

In short, CCTI's Complaint against Dr. Paul should be dismissed, and we respectfully request the opportunity to address Dr. Paul's proposed motion at the June 5 conference.

Respectfully submitted,

Brian D. Mogck

cc:    All Counsel of Record (via ECF)

---

[13] *See Qube Films Ltd. v. Padell*, No. 13-CV-8405, 2014 WL 3952931, at *8 (S.D.N.Y. Aug. 12, 2014).
[14] *See IMG Fragrance Brands, LLC v. Houbigant, Inc.*, 679 F. Supp. 2d 395, 407 (S.D.N.Y. 2009); *Citicorp Retail Servs. v. Wellington Mercantile Servs.*, 90 A.D. 2d 532, 532 (2d Dep't 1982).
[15] *IMG Fragrance Brands, LLC*, 679 F. Supp. 2d at 407–08 (citations omitted; emphasis added).
[16] Compl. ¶¶ 80–81.
[17] *See Joan Hansen & Co. v. Everlast World's Boxing Headquarters Corp.*, 296 A.D.2d 103, 110 (1st Dep't 2002).
[18] *See, e.g.*, Compl. ¶¶ 61, 66, 67, 68, 72.
[19] *Carvel Corp. v. Noonan*, 3 N.Y.3d 182, 190 (2004).
[20] *Id.* at 192.