UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CLEAN COAL TECHNOLOGIES, INC.,

                Plaintiff,

              -v.-

LEIDOS, INC., *formerly known as* SCIENCE APPLICATIONS INTERNATIONAL CORP., and DILO PAUL,

                Defendants.

17 Civ. 9678 (KPF)

**OPINION AND ORDER**

---

KATHERINE POLK FAILLA, District Judge:

By Opinion and Order dated March 28, 2019, the Court granted in full Defendant Leidos, Inc.'s ("Leidos") motion to dismiss, and granted in part and denied in part Defendant Dr. Dilo Paul's motion to dismiss, the Amended Complaint filed by Plaintiff Clean Coal Technologies, Inc. ("CCTI"). *See Clean Coal Techs., Inc.* v. *Leidos, Inc.*, 377 F. Supp. 3d 303 (S.D.N.Y. 2019) ("*Clean Coal I*").[1] Two of the three parties to this litigation now seek a do-over: Dr. Paul has moved for reconsideration of the decision pursuant to Rule 6.3 of the Local Rules for the United States District Courts for the Southern and Eastern Districts of New York. In the alternative, Dr. Paul has moved to strike certain

---

[1] Familiarity with the facts detailed, and conclusions reached, in the Court's March 28, 2019 Opinion and Order is assumed. *See Clean Coal Techs., Inc.* v. *Leidos, Inc.*, 377 F. Supp. 3d 303 (S.D.N.Y. 2019). Dr. Paul's memorandum of law in support of his motion for reconsideration is referred to as "Paul Recon. Br." (Dkt. #74); Dr. Paul's memorandum of law in support of his prior motion to dismiss is referred to as "Paul MTD Br." (Dkt. #53); and Dr. Paul's reply memorandum of law in support of his prior motion to dismiss is referred to as "Paul MTD Reply" (Dkt. #68). Plaintiff's memorandum of law in support of its motion for reconsideration is referred to as "Pl. Recon. Br." (Dkt. #74); Plaintiff's reply memorandum of law in support of its motion for reconsideration is referred to as "Pl. Recon. Reply" (Dkt. #79); and Plaintiff's memorandum of law in opposition to Defendant Leidos's motion to dismiss is referred to as "Pl. MTD Opp." (Dkt. #61). The Amended Complaint is referred to as "Am. Compl." (Dkt. #43).

portions of Plaintiff's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(f). Plaintiff, for its part, has moved pursuant to Local Rule 6.3 and Federal Rule of Civil Procedure 52(b) for reconsideration of the Court's decision dismissing the case as to Leidos. In the alternative, Plaintiff asks for leave to amend its Amended Complaint to cure any identified defects. For the reasons set forth in the remainder of this Opinion, Dr. Paul's motion for reconsideration is denied; Dr. Paul's motion to strike is granted in part; Plaintiff's motion for reconsideration is denied; and Plaintiff's request for leave to amend is denied.

## APPLICABLE LAW

### A. Motions for Reconsideration

"The decision to grant or deny a motion for reconsideration is within the sound discretion of the district court." *In re Optimal U.S. Litig.*, 813 F. Supp. 2d 383, 403 n.6 (S.D.N.Y. 2011) (quoting *Patterson* v. *United States*, No. 04 Civ. 3140 (WHP), 2006 WL 2067036, at *1 (S.D.N.Y. July 26, 2006)). Under Local Rule 6.3 and Federal Rule 52(b),[2] the moving party must "point to controlling decisions or data that the court overlooked — matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader* v. *CSX Transp. Inc.*, 70 F.3d 255, 256-57 (2d Cir. 1995) (internal citations omitted) (noting that the standard for granting motions for

---

[2] "The standards governing motions for amendment of findings under Rule 52(b) … and motions for reconsideration pursuant to Local Rule 6.3 are the same." *Osei* v. *Standard Chartered Bank*, No. 15 Civ. 3992 (LGS), 2015 WL 4557345, at *1 (S.D.N.Y. July 27, 2015).

2

reconsideration is "strict"); *accord Van Buskirk* v. *United Grp. of Cos., Inc.*, 935 F.3d 49, 54 (2d Cir. 2019).

"A motion for reconsideration may not be used to advance new facts, issues or arguments not previously presented to the Court, nor may it be used as a vehicle for relitigating old issues already decided by the Court." *Davidson* v. *Scully*, 172 F. Supp. 2d 458, 462 (S.D.N.Y. 2001) (citing *Shrader*, 70 F.3d at 257). "Such a motion should not be made to reflexively [] reargue those issues already considered when a party does not like the way the original motion was resolved." *In re Optimal*, 813 F. Supp. 2d at 387 (quoting *Makas* v. *Orlando*, No. 06 Civ. 14305 (DAB) (AJP), 2008 WL 2139131, at *1 (S.D.N.Y. May 19, 2008) (internal quotation marks omitted)). "Compelling reasons for granting a motion for reconsideration are limited to an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Abraham* v. *Leigh*, No. 17 Civ. 5429 (KPF), 2018 WL 3632520, at *1 (S.D.N.Y. July 30, 2018) (internal quotation marks omitted) (quoting *Virgin Atl. Airways, Ltd.* v. *Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992)).

**B.     Motions to Strike**

Federal Rule of Civil Procedure 12(f) provides that a court "may strike from a pleading … any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "Although motions to strike are generally disfavored, allegations may be stricken if they have no real bearing on the case, will likely prejudice the movant, or where they have criminal overtones." *Oram*

v. *SoulCycle LLC*, 979 F. Supp. 2d 498, 511 (S.D.N.Y. 2013) (internal citation and quotation marks omitted). The Second Circuit has urged that "neither a district court nor an appellate court should decide to strike a portion of the complaint on the grounds that the material could not possibly be relevant on the sterile field of the pleadings alone." *Lipsky* v. *Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976); *see generally GEOMC Co.* v. *Calmare Therapeutics Inc.*, 918 F.3d 92, 94-102 (2d Cir. 2019).

**C.    Motions for Leave to Amend**

Federal Rule of Civil Procedure 15(a) provides that "a party may amend the party's pleading ... by leave of court ... and leave shall be freely given when justice so requires." Fed. R. Civ. P. 15(a); *see generally Yamashita* v. *Scholastic Inc.*, 936 F.3d 98, 107 (2d Cir. 2019). The Second Circuit "strongly favors liberal grant of an opportunity to replead after dismissal of a complaint under Rule 12(b)(6)." *Porat* v. *Lincoln Towers Cmty. Ass'n*, 464 F.3d 274, 276 (2d Cir. 2006). However, "leave may be denied for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *Abreu* v. *Fairway Market LLC*, No. 17 Civ. 9532 (VEC), 2018 WL 3579107, at *1 (S.D.N.Y. July 24, 2018) (internal quotation marks omitted) (quoting *TechnoMarine SA* v. *Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014)). More specifically, "a plaintiff need not be given leave to amend if it fails to specify either to the district court or to the court of appeals how amendment would cure the pleading deficiencies in its complaint." *TechnoMarine*, 758 F.3d at 505. "Ultimately, the grant or denial of an opportunity to amend is within the

4

discretion of the District Court." *Abreu*, 2018 WL 3579107, at *1 (internal quotation marks omitted) (quoting *Foman* v. *Davis*, 371 U.S. 178, 182 (1962)).

## DISCUSSION

### A. The Court Denies Dr. Paul's Motion for Reconsideration

Dr. Paul identifies two grounds for reconsideration: (i) the Court overlooked his argument that Plaintiff had failed to allege but-for causation in its claim of tortious inference with prospective economic relations with the U.S. Department of Energy (the "DOE") (Paul Recon. Br. 1); and (ii) the Court incorrectly found that it had personal jurisdiction over Dr. Paul as to this claim (*id.* at 2). The Court will address each in turn.

#### 1. Plaintiff Did Not Fail to Allege But-For Causation

In moving to dismiss the Amended Complaint, Dr. Paul argued that Plaintiff's cause of action for tortious interference with prospective economic relations should be dismissed because Plaintiff had failed to allege each of the claim's required elements: (i) that Plaintiff had a business relationship with the DOE; (ii) that Dr. Paul knew of that relationship and intentionally interfered with it; (ii) that Dr. Paul acted solely out of malice, or used dishonest, unfair, or improper means; and (iv) that Dr. Paul's interference caused injury to the relationship. (Paul MTD Br. 23). In moving for reconsideration of the Court's decision in *Clean Coal I*, Dr. Paul argues that the Court erred in failing to determine whether Plaintiff had properly alleged the fourth element: that Plaintiff would have entered into an economic relationship but for Dr. Paul's wrongful conduct. (Paul Recon. Br. 1). After a careful review of Dr. Paul's brief

5

in support of his motion to dismiss (Dkt. #53) and the Court's prior opinion, *see Clean Coal I*, 377 F. Supp. 3d at 323-24, the Court agrees that it did not expressly find that Plaintiff had satisfied the but-for causation element of its tortious interference claim.  However, drawing all reasonable inferences in Plaintiff's favor and assuming all well-pleaded factual allegations to be true, *see id.* at 315 (quoting *Faber* v. *Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011)), the Court finds that Plaintiff's allegations easily satisfied the causation element.

In its Amended Complaint, Plaintiff alleged that it had a relationship with the DOE (Am. Compl. ¶¶ 27, 56); that Dr. Paul both provided the DOE with false expectations as to what information it could expect from Plaintiff (*id.* at ¶ 91) and then told the DOE that Plaintiff was financially unstable (*id.* at ¶ 96); that Dr. Paul prepared an "inaccurate and incomplete" report for Plaintiff (*id.* at ¶¶ 101-02) that Plaintiff had "little choice but to deliver" to the DOE (*id.* at ¶ 80); and that the DOE "stated its view that the 'final report' prepared by Dilo contained either intentional inaccuracies or negligent inaccuracies" (*id.* at ¶ 82).  The sum total of all these actions, Plaintiff alleges, was to damage Plaintiff's relationship with the DOE.  (*Id.* at ¶¶ 91, 97).  Dr. Paul contended in his brief in support of his motion to dismiss that these allegations were insufficient because they did not include an allegation that the DOE was considering Plaintiff for a contract or grant with which Dr. Paul then interfered. (Paul MTD Br. 25).  In so doing, however, Dr. Paul overestimated the burden that a plaintiff must meet on a motion to dismiss.

6

Even minimal allegations are sufficient to survive a motion to dismiss as long as they state a claim "that is plausible on its face." *See Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009). Drawing all reasonable inferences in Plaintiff's favor, the Court finds that Plaintiff sufficiently alleged that it had an ongoing correspondence with the DOE about its pilot plant and, further, that but for Dr. Paul's alleged interference, it would have entered into an economic relationship with the DOE. Given the prevailing standard that Dr. Paul must point to "controlling decisions or data" that might reasonably be expected to alter the Court's conclusion, *Shrader*, 70 F.3d at 256-57, Dr. Paul's argument for reconsideration falls short.

### 2. The Court Did Not Err in Its Analysis of Personal Jurisdiction

Separately, Dr. Paul argues that the Court overlooked the effect that dismissing all claims save the tortious interference with prospective economic relations claim would have on the Court's personal jurisdiction over Dr. Paul (*See* Paul Recon. Br. 2). Specifically, Dr. Paul claims that the Court ignored its own decision in *Mali* v. *British Airways*, No. 17 Civ. 685 (KPF), 2018 WL 3329858, at *6 (S.D.N.Y. July 6, 2018), in which the Court stated that a plaintiff must establish specific jurisdiction over each individual claim. (*Id.* at 3 n.6). Dr. Paul contends that, with all other claims having been dismissed, Plaintiff failed to allege facts pertaining to the remaining tortious interference claim that would support specific jurisdiction as to that claim. (*Id.* at 2).

As preliminary points, it is worth noting that: (i) Dr. Paul's citation to *Mali* in his motion to dismiss papers is scarcely more than a footnote to his

7

argument about lack of personal jurisdiction under CPLR § 302(a)(3) (*see* Paul MTD Reply 6 n.30); and (ii) the Court found that it had personal jurisdiction over Dr. Paul pursuant to CPLR § 302(a)(1), *see Clean Coal I*, 377 F. Supp. 3d at 313-14. Thus, the Court did not overlook Dr. Paul's proposed point of law in its decision. The Court instead found that Plaintiff had alleged facts necessary to establish personal jurisdiction over Dr. Paul for each individual claim, including the claim of tortious interference with prospective economic relations with the DOE. *See id.*

Dr. Paul, in essence, seeks to reargue that there is no "articulable nexus" between his alleged contacts with New York and Plaintiff's claim. (*Compare* Paul Recon. Br. 3-4, *with* Paul MTD Br. 3). In ostensible support, Dr. Paul seizes on a phrase from *Licci* v. *Lebanese Canadian Bank*, 20 N.Y.3d 327, 341 (2012), in which the New York State Court of Appeals held that "where at least one element arises from the New York contacts, the relationship between the business transaction and the claim asserted supports specific jurisdiction under [CPLR § 302(a)(1)]." (Paul Recon. Br. 3). Dr. Paul appears to overread *Licci* to imply that CPLR § 302(a)(1)'s "arising from" prong requires Plaintiff to draw a direct link between allegations of New York contacts and at least one element of its claim. On the contrary, courts repeatedly cite to *Licci* for the permissiveness of the standard that the Court of Appeals created in that case. *See, e.g., Wilson* v. *Dantas*, 9 N.Y.S.3d 187, 195 (1st Dep't 2015) ("The Court of Appeals has consistently held that causation is not required, and that the inquiry under the statute is relatively permissive." (internal quotation marks

and brackets omitted)). All that the "arising from" prong requires, according to *Licci*, is "a relatedness between the transaction and the legal claim such that the latter is not completely unmoored from the former." *Licci*, 20 N.Y.3d at 339. "A causal link between the defendant's New York business activity and a plaintiff's injury" is not required. *Licci ex rel. Licci* v. *Lebanese Canadian Bank, SAL*, 737 F.3d 161, 168 (2d Cir. 2013).

In its prior opinion, the Court noted that Dr. Paul's allegedly tortious actions were "closely related to, and indeed arose from, the breakdown of an ongoing New York-based contractual relationship." *Clean Coal I*, 377 F. Supp. 3d at 313. That finding remains true even when reviewing the tortious interference with prospective economic relations claim in isolation. Even if specific alleged acts of sabotage, such as the production of the incomplete and inaccurate report, did not take place in New York (*see* Paul Recon. Br. 4), the focal point for Dr. Paul's relationship with Plaintiff, and thus the focal point for how and why Dr. Paul allegedly sabotaged Plaintiff's relationship with the DOE, was in New York. "While the allegations do not demonstrate that Dr. Paul's allegedly tortious activities were caused by the New York transaction, they are hardly 'unmoored' from it." *Id.*

Moreover, the cases on which Dr. Paul relies are substantially different from the instant case. (*See* Paul Recon. Br. 6 n.19). Dr. Paul cites to *Pichardo* v. *Zayas*, 996 N.Y.S.2d 176, 179 (2d Dep't 2014), but in that case "the alleged duty owed … the alleged breach of that duty, and the plaintiff's injury all arose or occurred in New Jersey." The only connection to New York was "that the

9

agreement to perform the subject work ... was reached in New York." *Id.* Dr. Paul also cites to *Thackurdeen* v. *Duke University*, 130 F. Supp. 3d 792, 801 (S.D.N.Y. 2015), but there the only connection to New York was the fact that the plaintiffs' "claims ... arise out of the contracts they signed, at home in New York." Unlike those cases, where the sole connection to the forum was that it served as a one-time situs of contract, here "Dr. Paul is alleged to have aggressively pursued a relationship with Plaintiff in New York, and then taken retributive actions in response to the failure of that relationship." *Clean Coal I*, 377 F. Supp. 3d at 313. Given the permissive inquiry that § 302(a)(1) allows, it is clear that the Court's original analysis of personal jurisdiction was correct.

In sum, the Court denies Dr. Paul's motion for reconsideration on both fronts, i.e., as to whether Plaintiff failed to allege "but-for" causation and as to whether Plaintiff alleged facts sufficient for the Court to establish personal jurisdiction over Dr. Paul.

**B.     The Court Grants in Part and Denies in Part Dr. Paul's Motion to Strike**

In the alternative, Dr. Paul moves to strike portions of Plaintiff's Amended Complaint that Dr. Paul believes to have been rendered immaterial by the Court's prior decision. (Paul Recon. Br. 6). Specifically, Dr. Paul moves to strike Paragraphs 9, 13-16, 19, 22, 32-55, 61-63, 64-72, 84-85, 87-88, 105-06, 108-10, 111-17, 118-24, 125-35; the references to "various investors" in Paragraphs 137-40; Paragraph A of the Requested Relief; and the references to "Leidos" and "CCTI's contracts" in Paragraph B of the Requested Relief. (*Id.* at 7). In total, this amounts to striking over half of the Amended Complaint.

Dr. Paul contends that these selected portions relate solely to either a dismissed party or previously-dismissed claims. (*Id.*).

Given the heavy standard counseling against motions to strike, *see Lipsky*, 551 F.2d at 893, the Court declines to grant the entirety of Dr. Paul's request. The Court grants the motion as to Paragraphs 9 and 111-24, Paragraph A of the Requested Relief, and the reference to "Leidos" in Paragraph B of the Requested Relief, but denies the motion as to the remainder. In a case such as this, where the allegations of the various parties and claims are thoroughly intertwined with one another, it would be too difficult and too hasty to excise portions that only superficially seem unrelated to the claims that remain. The Court is unpersuaded by Dr. Paul's citations to case law (Paul Recon. Br. 6 n.20), one of which provides far too little information to provide support for Dr. Paul's motion, *see Ruffino* v. *Murphy*, No. 09 Civ. 1287 (VLB), 2009 WL 5064452 (D. Conn. Dec. 16, 2009) (granting a motion to strike allegations against dismissed defendants without discussion of the nature of the allegations), and another of which is inapposite to the instant case, *see Chivalry Film Prods.* v. *NBC Universal, Inc.*, No. 05 Civ. 5627 (GEL), 2006 WL 89944, at *4 (S.D.N.Y. Jan. 11, 2006) (striking "the vast bulk" of a *pro se* complaint that consisted of "a series of repetitious and alternative allegations of every conceivable description of each defendant, its addresses and offices, and its potential relationship with every other defendant"). Moreover, the Court finds support for its decision in *Masters* v. *Wilhelmina Model Agency, Inc.*, No. 02 Civ. 4911 (HB), 2003 WL 1990262, at *4 (S.D.N.Y. Apr. 29, 2003)

11

(striking dismissed counts from amended complaint but retaining factual allegations that "continue to serve as support in connection with the … claims that remain"), on which Dr. Paul relies. (Paul Recon Br. 6 n.20). The Court is also unconvinced that retaining the factual allegations will place a "substantial and unnecessary burden" on Dr. Paul. (*Id.* at 6). If Dr. Paul encounters an allegation so wholly irrelevant to him that he cannot adequately respond in his Answer, he can simply respond that he lacks knowledge or information sufficient to admit or deny the allegation. Similarly, Dr. Paul is under no obligation to respond to discovery requests that are completely irrelevant. Neither of these options imposes a significant burden on Dr. Paul. The motion to strike is thus granted in part and denied in part.

## C. The Court Denies Plaintiff's Motion for Reconsideration

Plaintiff identifies two grounds for reconsideration, both concerning the Court's finding that Plaintiff's breach of contract claim against Leidos was barred by *res judicata*: (i) the Court overlooked allegations pertaining to breaches that occurred after Plaintiff and Leidos agreed to a Stipulation of Settlement (the "Stipulation") in March 2017; and (ii) the Court overlooked specific allegations that would explain why Plaintiff did not learn about Leidos's prior breaches at the time of the Stipulation and from which the Court could infer that Leidos concealed information about those breaches from Plaintiff. The Court will address each in turn.

### 1. The Court Did Not Overlook Plaintiff's Allegations of Breaches Post-Dating the Stipulation

In its prior opinion, the Court found that the entirety of Plaintiff's breach of contract claim was barred by *res judicata, see Clean Coal I*, 377 F. Supp. 3d at 316-18. In making this finding, the Court relied on the principle that even in the context of New York's permissive counterclaim rule, "a party is not free to remain silent in an action in which he is the defendant and then bring a second action seeking relief inconsistent with the judgment in the first action by asserting what is simply a new legal theory." *See id.* at 317 (citing *Henry Modell & Co.* v. *Ministers, Elders & Deacons of the Reformed Protestant Dutch Church*, 68 N.Y.2d 456, 461 (1986)). Plaintiff now argues that the Court both misapplied the standard of review on a Rule 12(b)(6) motion and overlooked allegations showing that Plaintiff did not "remain silent" about two particular breaches — Leidos's failures to deliver the final report and to turn over the SD Card, password, and carrier CDs — because those breaches occurred after Plaintiff agreed to the Stipulation. (*See* Pl. Recon. Br. 3-4). These errors, it is alleged, led the Court improperly to preclude claims based on those breaches. (*See id.*). After a careful review of the Court's prior opinion, the parties' briefing, the Amended Complaint, the Stipulation, and the Complaint from the New York State Action, the Court concludes that it neither overlooked the

allegation pertaining to the timing of the final report-related breach[3] nor misapplied the standard of review.

To begin, Plaintiff contends that the Court overlooked allegations demonstrating that Leidos, subsequent to the Stipulation, breached the Services Agreement between the parties (the "Agreement") by failing to deliver a compliant final report as required by the Agreement. (*See* Pl. Recon. Br. 3-4). Specifically, Plaintiff points to allegations that "unknown to CCTI at the time [of the Stipulation], Leidos had apparently not intended to fulfill its obligations under the Services Agreement" (Am. Compl. ¶ 108), and that Leidos did in fact breach by failing to deliver a compliant final report (*id.* at ¶¶ 79, 128). In its prior opinion, however, the Court expressly addressed Plaintiff's argument: that Plaintiff "discovered new facts after the stipulation was entered in the New York State Action," and thus did not "remain silent," because it did not know enough to speak of anything at the time of the Stipulation. *See Clean Coal I*, 377 F. Supp. 3d at 317. Indeed, the Court observed that Plaintiff's own Amended Complaint undercut this argument by acknowledging that Plaintiff *was* aware of deficiencies in the performance of the Construction Contract, such that it would be unreasonable to infer (and thus implausible) that Plaintiff could not have known of Leidos's breaches at the time it agreed to the Stipulation. *See id.*

---

[3]  The Court denies reconsideration as to Plaintiff's claim that Leidos breached the Agreement by failing to provide the SD Card, password, and carrier CDs. A review of the Amended Complaint shows that Plaintiff included this allegation as evidence for its tortious interference with the Construction Contract claim, and not as evidence for its breach of contract claim. (*See* Am. Compl. ¶ 122). Therefore, there is no relevant breach of contract claim pertaining to those facts that the Court could have overlooked.

This reasoning extends to the specific breach regarding the final report that is discussed in Plaintiff's reconsideration motion. Although the Amended Complaint alleges that Leidos disputed its obligation to provide a final report in May 2017 and then breached by providing a non-compliant report in August 2017 (Am. Compl. ¶¶ 77, 79), Plaintiff could and should have known about this breach at the time it agreed to the Stipulation. After all, Benham informed Plaintiff that it had completed testing — the results of which were to be the subject of the final report — at the pilot plant in March 2016, a full year before the Stipulation. (*Id.* at ¶¶ 18(i), 20). Given (i) the expanse of time between the completion of testing and the Stipulation and (ii) Plaintiff's acknowledged awareness of Leidos's deficiencies in that intervening period (*id.* at ¶ 33), Plaintiff has not alleged facts to show that it could not have known about Leidos's failure to provide a report summarizing the test results at the time of the Stipulation. Even drawing all reasonable inferences in Plaintiff's favor, the supposedly overlooked allegations merely indicate that Leidos's breach regarding its obligation to deliver a final report spanned the time frame before and after execution of the Stipulation. As the Court previously noted, "[e]lements of this dispute clearly existed prior to the stipulation." *Clean Coal I*, 377 F. Supp. 3d at 317. Therefore, Plaintiff is not absolved of its responsibility to have raised claims regarding Leidos's failure to deliver the report during the New York State Action.

### 2. The Court Did Not Overlook Plaintiff's Allegations Regarding Concealment

Plaintiff's second basis for reconsideration fares no better. In its briefing opposing Leidos's motion to dismiss, Plaintiff argued that it could not have known about any of Leidos's breaches — occurring before or after it agreed to the Stipulation — because Plaintiff only regained access to its pilot plant (and learned that Leidos had not performed the services it was obligated to perform) after the Stipulation had been entered into. (*See* Pl. MTD Opp. 7). In its motion for reconsideration, Plaintiff repeats its prior argument almost verbatim. (*Compare id.* ("CCTI has plausibly pleaded that it ... could not have discovered that Leidos ... had not performed under the Services Agreement because it was not until after the Stipulation ... that CCTI regained access to the pilot plant and learned from another consulting company with special expertise that those services had not in fact been performed."), *with* Pl. Recon. Br. 4-5 ("[I]t was not until CCTI regained access to the pilot plant and hired a new consultant with the requisite expertise for performing the services required ... that CCTI learned of Leidos'[s] failure to perform material terms of the Services Agreement.")). As before, the Court finds this line of attack unavailing.

Plaintiff previously relied on *Mason Tenders District Council Pension Fund v. Messera*, No. 95 Civ. 9341 (RWS), 1996 WL 578048, at *3 (S.D.N.Y. Oct. 8, 1996), for the proposition that the Court could not give the New York State Action preclusive effect over breaches of which Plaintiff was unaware at the time of the Action. (*See* Pl. MTD Opp. 5-6). The Court, however, read *Mason*

*Tenders* to hold that "defendants are not entitled to preclusion where they have concealed material giving rise to the claims at issue." *Clean Coal I*, 377 F. Supp. 3d at 317. In its motion for reconsideration, Plaintiff does not dispute the Court's reading of *Mason Tenders*. Instead, Plaintiff simply argues that the Court overlooked allegations from which it could infer either that Plaintiff could not have known about Leidos's breaches prior to the Stipulation or that Leidos concealed the facts of its breach from Plaintiff. (*See* Pl. Recon Br. 4). However, Plaintiff once again does not point to any allegations that support either scenario. The allegations to which Plaintiff points do not explain why Plaintiff did not know about its inability to restart the pilot plant until over a year after Leidos announced its agreement to sell Benham to the Haskell Company (Am. Compl. ¶ 19); nor does it provide any evidence of active concealment, *see Clean Coal I*, 377 F. Supp. 3d at 318. A motion for reconsideration is not to "be used as a vehicle for relitigating old issues already decided by the Court." *Davidson*, 172 F. Supp. 2d at 462 (citing *Shrader*, 70 F.3d at 257). In the absence of a showing that the Court overlooked controlling law or data, *see Shrader*, 70 F.3d at 256-57, Plaintiff's motion must fail.

In sum, the Court denies Plaintiff's motion for reconsideration premised upon the Court's allegedly improper application of principles of *res judicata* to Plaintiff's breach of contract claim.

### D. The Court Plaintiff's Request for Leave to Amend

In the alternative, Plaintiff asks the Court for leave to amend its Amended Complaint. (Pl. Recon. Br. 5). In this regard, the Court notes that

17

Plaintiff already amended its complaint once, prior to the motions to dismiss filed by Leidos and Dr. Paul. At no point during the briefing of those motions did Plaintiff request leave to file a Second Amended Complaint, either formally or informally. And in the opening brief of its reconsideration motion, Plaintiff offered the Court no specifics as to how any amendment could cure the identified deficiencies in its Amended Complaint. Instead, Plaintiff merely stated that it "would be able to cure deficiencies identified by the Court in connection with its breach of contract claim." (*Id.*). Only in its reply brief does Plaintiff suggest that it could "amend its pleadings to better articulate the timing of certain breaches that occurred after the parties entered into the Stipulation as explained in this Motion." (Pl. Recon. Reply 5). *Cf. ABN Amro Verzekeringen BV* v. *Geologistics Americas, Inc.*, 485 F.3d 85, 97 n.12 (2d Cir. 2007) ("We decline to consider an argument raised for the first time in a reply brief."); *id.* at 100 n.16; *accord Clubside, Inc.* v. *Valentin*, 468 F.3d 144, 159 n.5 (2d Cir. 2006) (Sotomayor, *J.*).

Lacking a specific proposal from Plaintiff, the Court finds that leave to amend would be futile. Even if the Court were to accept Plaintiff's more specific basis for amendment, as provided in its reply brief (*see* Pl. Recon. Reply 5), the record before it does not suggest that a more detailed timeline would allow Plaintiff to survive a motion to dismiss. The Court has found that the breaches alleged in Plaintiff's Amended Complaint all either occurred prior to the Stipulation or span the time before and after the Stipulation. Thus, further detail on the timing of certain breaches — facts that Plaintiff has

already alleged with a degree of specificity — would not appear to cure the Amended Complaint's deficiencies. The request for leave to amend is denied.[4]

## CONCLUSION

For the reasons set forth in this Opinion, Dr. Paul's motion for reconsideration is DENIED; Dr. Paul's motion to strike is GRANTED IN PART and DENIED IN PART; Plaintiff's motion for reconsideration is DENIED; and Plaintiff's request for leave to amend its pleadings is DENIED. The parties are hereby ordered to provide a joint letter and Case Management Plan, conforming with the requirements set forth in the Notice of Initial Pretrial Conference (Dkt. #9), on or before **December 4, 2019**.

SO ORDERED.

Dated: November 13, 2019
New York, New York

KATHERINE POLK FAILLA
United States District Judge

---

[4] The Court has taken note of Plaintiff's footnote discussing its failure to file a formal motion for leave to amend and its contemplated future motion practice. (*See* Pl. Recon. Reply 6 n.2). In denying Plaintiff's request for leave to amend, the Court is not deciding the issue, not presently before it, of whether Plaintiff can file a motion to amend the judgment pursuant to Rule 59(e) after, and because of denial of, a substantively similar motion for reconsideration filed pursuant to Local Rule 6.3. *Cf. Lavigne* v. *Michael's Stores, Inc.*, No. 14 Civ. 1717 (CSH), 2015 WL 1826169, at *6 (D. Conn. Apr. 22, 2015) (denying a motion for leave to amend made contemporaneously with motion for reconsideration); *Air Espana* v. *O'Brien*, No. 95 Civ. 1650, 1997 WL 803756, at *7 (E.D.N.Y. Nov. 26, 1997) (denying a motion for leave to amend made contemporaneously with motion for reconsideration).